# 14-1119

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

CONSOLIDATED ENERGY DESIGN INC.,

*Plaintiff-Appellant,*

*-against-*

THE PRINCETON CLUB OF NEW YORK,

*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR THE PLAINTIFF-APPELLANT

THE STOLPER GROUP, LLP
*Attorneys for Plaintiff-Appellant*
*Consolidated Energy Design Inc.*
*241 Centre Street, Sixth Floor*
*New York, New York 10013*
*(212) 337-3502*

*By:* MICHAEL T. STOLPER

Echo Appellate Press, Inc. • 30 West Park Avenue • Long Beach, New York 11561 • (516) 432-3601

Printed on Recycled Paper                    20620

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..........................................................................iii

CORPORATE DISCLOSURE STATEMENT .............................................1

JURISDICTIONAL STATEMENT................................................................1

PRELIMINARY STATEMENT.....................................................................1

STATEMENT OF ISSUES PRESENTED FOR REVIEW ...........................2

STATEMENT OF THE CASE .....................................................................3

STATEMENT OF FACTS.............................................................................4

      A.   THE PARTIES ...........................................................................4
      B.   CED'S SERVICES ......................................................................5
      C.   CED'S INVOICE .......................................................................8

STANDARD OF REVIEW .........................................................................10

SUMMARY OF ARGUMENT ....................................................................11

ARGUMENT ...............................................................................................12

I.    THE DISTRICT COURT ERRED IN COMMENCING THE
     STATUTE OF LIMITATIONS UPON THE TERMINATION
     OF SERVICES ......................................................................................12

      A.   Hahn's Application is Limited ....................................................13
      B.   The District Court's Application of Hahn is Inconsistent
           with New York Case Law....................................................15
      C.   There Was No Unreasonable Delay .............................................20

II.   THE DISTRICT COURT ERRED IN HOLDING THAT
     PLAINTIFF'S ACCOUNT STATED CLAIM WAS NOT
     PROPERLY PLED..................................................................................25

A. The District Court Erroneously Deemed a Three
   Year Delay to be Reasonable ......................................................... 25
B. The District Court Erred in Determining that the Club
   Disputed the Invoice Prior to 2011 ................................................ 29

CONCLUSION ............................................................................................ 32

CERTIFICATE OF COMPLIANCE ............................................................. 33

# TABLE OF AUTHORITIES

## CASE LAW

Page(s)

Albany Specialties v. Shenendehowa Cent. School Dist., 307 A.D.2d
514, 763 N.Y.S.2d 128 (3d Dept. 2003) ............................................. 19, 20

Bluefin Wear, Inc. v. Tuesday's Child Boutique, Inc., 33 Misc.3d
1233(A), 2011 WL 6187134
(Sup. Ct. Kings County Dec. 14, 2011) ............................................... 17, 18

Bowne of New York, Inc. v. International 800 Telecom Corp., 178
A.D.2d 138, 576 N.Y.S.2d 573 (1st Dept. 1991) ...................................... 31

Chambers v. Time Warner, Inc., 282 F.3d 147 (2d Cir. 2002) ...................... 29

City of Pontiac General Employees' Retirement System v. MBIA, Inc.,
637 F.3d 169 (2d Cir. 2011) ...................................................................... 10

Continental Cas. Co. v. Stronghold Ins. Co., Ltd., 77 F.3d 16 (2d Cir.
1996) ..................................................................................... 16, 22, 23, 24

DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104 (2d Cir. 2010) ............. 29, 30

Dreyer and Traub v. Rubinstein, 191 A.D.2d 236, 594 N.Y.S.2d 257
(1st Dept. 1993) ........................................................................................ 31

Hahn Auto. Warehouse, Inc. v. Am. Zurich Ins. Co., 18 N.Y.3d 765,
944 N.Y.S.2d 742, 967 N.E.2d 1187 (2012) ....................... 12, 13, 14, 15,
.................................................................... 16, 18, 19, 20, 21, 22, 24, 25

Healthcare Capital Mgt., LLC v. Abrahams, 300 A.D.2d 108, 751
N.Y.S.2d 460 (1st Dept. 2002) ................................................................ 29

Helprin v. Harcourt, Inc., 277 F. Supp. 2d 327 (S.D.N.Y. 2003) .................. 23

Henry Boeckmann, Jr. & Associates, Inc. v. Board of Educ., Hempstead
Union Free School Dist. No. 1, 207 A.D.2d 773, 616 N.Y.S.2d 395
(2d Dept. 1994) .................................................................................. 17, 18

-iii-

**Page(s)**

Hertzberg & Sanchez P.C. v. Friendship Dairies Inc., 14 Misc.3d
    136(A), 2007 WL 488141 (N.Y. Sup. App. Term 2007) .........................18

IMG Fragrance Brands, LLC v. Houbigant, Inc., 679 F. Supp. 2d 395
    (S.D.N.Y. 2009) ...........................................................................................26

In re Rockefeller Center Properties, 266 B.R. 52 (S.D.N.Y. 2001).........29, 30

In re Rockefeller Center Properties, 272 B.R. 524 (S.D.N.Y. 2000).............29

John J. Kassner & Co. v. City of New York, 46 N.Y.2d 544, 415
    N.Y.S.2d 785, 389 N.E.2d 99 (1979)............................................15, 16, 17

Kassner v. 2nd Avenue Delicatessen Inc., 496 F.3d 229 (2d Cir. 2007).......10

Kingsley Arms, Inc. v. Copake-Taconic Hills Cent. School Dist., 9
    A.D.3d 696, 780 N.Y.S.2d 805 (3d Dept. 2004) .......................................19

Kramer, Levin, Nessen, Kamin & Frankel v. Aronoff, 638 F. Supp. 714
    (S.D.N.Y. 1986) ......................................................................27, 28, 30, 31

LeBoeuf, Lamb, Greene & MacRae, L.L.P. v. Worsham, 185 F.3d 61
    (2d Cir. 1999)..............................................................................................26

Liberty Mutual Ins. Co. v. Precision Valve Corp., 402 F. Supp. 2d 481
    (S.D.N.Y. 2005) ..........................................................................................17

Lockwood v. Thomas, 11 N.Y. 170 (1854) ...................................................28

Minskoff Grant Realty & Mgt. Corp. v. 211 Mgr. Corp., 71 A.D.3d
    843, 897 N.Y.S.2d 485 (2d Dept. 2010)..............................................20, 23

Navimex S.A. De C.V. v. S/S Northern Ice, 617 F. Supp. 103 (S.D.N.Y.
    1984)......................................................................................................28, 29

Phillips Constr. Co. v. City of New York, 61 N.Y.2d 949, 463 N.E.2d
    585, 475 N.Y.S.2d 244 (1984)............................................................18, 19

Shomo v. City of New York, 579 F.3d 176 (2d Cir. 2009) ...........................29

State of New York v. City of Binghamton, 72 A.D.2d 870, 421
    N.Y.S.2d 950 (3d Dept. 1979) ............................................................21, 22

**Page(s)**

Thompson v. Horwitz, 100 A.D.3d 864, 954 N.Y.S.2d 572 (2d Dept.
    2012)............................................................................................................23

Town of Brookhaven v. MIC Prop. & Cas. Ins. Corp., 245 A.D.2d 365,
    668 N.Y.S.2d 37 (2d Dept. 1997) .......................................................21, 22

Verizon N.Y., Inc. v. Sprint PCS, 43 A.D.3d 686, 841 N.Y.S.2d 529
    (1st Dept. 2007)......................................................................16, 17, 18, 24

## STATUTE

28 U.S.C. § 1332(a)(1)........................................................................................1

## CORPORATE DISCLOSURE STATEMENT

In accordance with Federal Rule of Appellate Procedure 26.1, counsel for appellant Consolidated Energy Design Inc. certifies that appellant is not a public corporation and has no parent corporation. Appellant is 100% owned by an individual, Rey Montalvo.

## JURISDICTIONAL STATEMENT

The district court had jurisdiction under 28 U.S.C. § 1332 (a)(1). A5 (citations to the appendix are in the form of "**A[page]**"). The district court granted Defendant-Appellee's motion to dismiss Plaintiff-Appellant's complaint in an order dated March 24, 2014. A93-94. A timely notice of appeal was filed on April 14, 2014. A95.

## PRELIMINARY STATEMENT

The district court held that Plaintiff's breach of contract claim was less than two months too late and was therefore time barred. A87-88. It is uncontested that Plaintiff ceased working for Defendant on October 12, 2007 (the "**Termination Date**") and filed suit on December 10, 2013. A42. According to the district court's decision, Plaintiff was in a position to sue the Club on the date Plaintiff ceased work (i.e., Plaintiff's claims began accruing on the Termination Date). A87.

The district court erred in its interpretation of New York statute

of limitations decisional history in the context of breach of contract claims. Plaintiff could not, and therefore was not obligated to, sue Defendant on the Termination Date. Without unreasonable delay, Plaintiff had to first invoice Defendant and Defendant had to then reject the invoice.

The district court also committed reversible error by holding that Defendant's three-year delay in objecting to Plaintiff's invoice was reasonable. A91. This runs counter to both the plain terms of the complaint and New York account stated case law.

With this appeal, appellant respectfully asks this Court to reverse the district court's dismissal of the breach of contract and account stated causes of action.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1.      Did the district court err in holding that the statute of limitations began to run on the date Plaintiff terminated its services, thus barring Plaintiff's breach of contract action?

2.      Did the district court err in determining that three years was a reasonable amount of time for Defendant to fail to dispute Plaintiff's invoice?

-2-

## STATEMENT OF THE CASE

On December 10, 2013, Consolidated Energy Design Inc. ("**Plaintiff**" or "**CED**") brought a breach of contract action against The Princeton Club of New York (the "**Club**" or "**Defendant**") arising out of the Club's failure to pay for energy consulting services provided by CED. A1; A4. Plaintiff had a successful 13-year relationship with Defendant, providing energy and engineering consulting services requested by Defendant over that time. A4. In the summer of 2007, Defendant requested that CED provide specific energy consulting services with regard to a tri-generation plant project for the Club. A4. CED provided such services between June and October 2007 in reliance on the Club's assurances of payment and the 13-year history of the Club paying invoices based on oral requests for services. A5-6; A9. After CED voluntarily terminated its services for the project in October 2007, CED notified Defendant that an invoice for the services would be forthcoming. A4. Because CED's invoices to the Club were customarily accompanied by extensive back-up materials, a delay of several months in providing an invoice was not unusual. A8. In July 2008, CED provided Defendant with an invoice along with over 80 pages of documentation in support of the invoice. A8. Defendant ignored the invoice, without basis or explanation, until lawyers

-3-

became involved in 2011. A57-58. CED attempted to resolve the matter several times over the years, most recently in September 2013, but Defendant had not acted in good faith. A44. CED had no choice but to initiate litigation and permanently sever its relationship with Defendant. A44.

CED filed this action against the Club asserting claims for breach of contract, promissory estoppel, unjust enrichment and account stated, and seeking: compensatory damages in excess of $250,000.00 plus statutory interest accruing from the time of breach; consequential damages; an award of costs, including reasonable attorneys' fees; and such other and further relief as the Court deems just and proper. A9-11.

On March 24, 2014, the Honorable Katherine B. Forrest, United States District Judge, issued an Opinion and Order ("**Order**") granting Defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), and directed the clerk to enter judgment dismissing Plaintiff's complaint. A83-92. Judgment was so entered on March 25, 2014. A93-94.

## STATEMENT OF FACTS

### A.   The Parties

Defendant The Princeton Club of New York is a private club located at 15 West 43rd Street, New York, New York. A5. Plaintiff CED is

-4-

an energy consulting firm incorporated and based in New Jersey that provides services in the energy conservation arena. A5. CED's engineers evaluate Heating, Ventilation & Air Conditioning ("**HVAC**"), lighting, Domestic Hot Water ("**DHWS**") and other building systems. A5.

### B.   CED's Services

CED provided such services to the Club over a 13-year period. A5. During that time, the Club paid CED in excess of $2 million in fees. A5. More than half of the monies were paid not based on written contracts but rather pursuant to CED invoices issued after the requested work had been completed. A5-6. In other words, more often than not, the Club requested certain services orally (telephonically or at meetings), CED fulfilled those requests, sent invoices or purchase orders to the Club after-the-fact and then the Club paid the invoices. A6.

In early 2007, the Club solicited bids for engineering services in connection with a tri-generation plant project (the "**Project**"). A6. The Club sought to replace two antiquated and inefficient steam absorption chillers with one gas fired Broad cogen enabled absorption chiller. A6. The energy savings were anticipated to be significant. A6.

CED submitted a bid on June 6, 2007, with clarifications submitted on or about July 17, 2007. A6. On or about July 25, 2007, the

Club informed CED that it had chosen Siemens, a large energy savings firm, to proceed as the lead project development firm on the Project. A6. CED's claims in this lawsuit are not based on any of the time or effort CED expended in providing its bid to the Club. A6.

Subsequent to the Club's selection of Siemens, the Club insisted that CED work under Siemens to provide engineering support and look out for the Club's best interests. A6. Among other things, the Club requested that CED serve on the mechanical, electrical, plumbing and associated architectural design team working through Siemens. A6. The Club called upon CED to assist in developing a Scope of Work, budget and other Project-related information based on CED's unique knowledge of the Club over its 13-year history. A6. The Club was under pressure to move the Project along for the summer 2008 cooling season (because it would take at least six months to get the appropriate equipment from China). A6.

CED obliged the Club's request, providing Siemens with confidential and proprietary information relating to the Club that CED had developed over the aforementioned 13-year history. A6-7. Among other things, CED provided building load calculations to determine heating, cooling and ventilation capacities. A7. As CED's principal, Rey Montalvo, explained to the Club's Manager, Larry Hines, in one particular email

-6-

exchange: "we felt we needed to do so if for nothing else, to keep the project moving forward and on schedule so the [Club] would not get in a jam." A7.

CED and the Club (or the Club's representatives) had extensive communications with respect to CED's Project-related work. A7. A summary of these communications was provided to the Club on July 3, 2008 (and at various times thereafter) in conjunction with the invoice for services rendered. A7.

The work CED did to assist the Club represented real energy consulting services from which the Club derived substantive benefit. A7. For example, CED toured other Broad Absorption Chiller facilities in August 2007 with Club representatives at the Club's insistence to help advise on the scope and budget of the Project and the viability of the equipment. A7. In addition, the Club required CED to attend (and CED both attended and participated in) regular Project meetings and telephone conferences, including the Project kickoff meeting. A7.

While CED provided energy consulting services (mostly) through Siemens during this period, ultimately CED could not work out a long term agreement with Siemens due to CED's stated concerns about Siemens (the Club's termination of Siemens a year later may have validated

CED's concerns). A7. The lack of an agreement with Siemens and CED's decision to terminate its role with the Project on or around October 12, 2007 had no impact on the Club's obligation to pay for CED's work prior to termination. A7. CED provided services (not bid work) based on the Club's representation that CED was part of the design team and based on the 13-year history CED would be paid. A7.

### C. CED's Invoice

The Club knew that it would be invoiced for CED's design team work. A8. Aside from the parties' 13-year billing and payment practice, at around the time CED ceased working on the Project in October 2007, there were a series of emails and oral communications on the topic. A8. Among the emails was one from Siemens requesting that CED forward to the Club an invoice for all work performed. A8. In addition, at a December 5, 2007 meeting with the Club's Manager Larry Hines, CED's principal so informed Mr. Hines that a bill for CED's work on behalf of the Club would be forthcoming. A8. Mr. Montalvo (of CED) followed up the meeting with an email on December 28, 2007 in which he explained:

> CED continued to attend mandatory job meetings and provide engineering consulting services to Siemens so that the [Club] would not fall behind schedule on this project. The engineering consulting services CED provided to the [Club] contained information that was proprietary and

-8-

confidential to CED and which CED would not
normally share with any competitor (including
Siemens). CED provided this proprietary and
confidential information for the benefit of the
[Club], as CED negotiated in good faith with
Siemens, because of our long relationship with the
[Club] and your assurances from you and Steve
Hall that we would get the contract and work
together with Siemens to complete this project for
the [Club].

All of the engineering consulting services CED
provided benefited the Club because this was work
that needed to be provided and allowed the project
to move forward. Therefore, as I mentioned at our
12/5/07 meeting, I am preparing an invoice to the
[Club] for the engineering consulting services we
provided to the [Club]. A8.

The Club did not object or otherwise challenge CED on this

point. A8. At no time did the Club state or request that CED provide

services on a pro bono basis.

It took some time to compile the invoice and its 80+ page

backup documentation. A8. A delay in providing an invoice, even a delay

of several months, was not out of the ordinary between the Club and CED

over its 13-year history. A8. The Club was also a notoriously slow payer,

taking on average between two to eight months to pay invoices. A57. The

process of invoicing after the completion of services was part of the ordinary

course of business between the parties. A5-6; A57.

CED provided the invoice and backup in July 2008. A8. Mr.

-9-

Montalvo followed up with Mr. Hines via phone call and email on several occasions. A8. He even had a meeting with Mr. Hines to discuss the invoice. Mr. Hines opted to ignore the invoice. A8-9. After multiple efforts to address the invoice with Mr. Hines, Mr. Montalvo directed the invoice to the Club Finance Chair Wayne Comer in July 2009. A9. At no point between July 2008 and 2011 did the Club assert any objections to the invoice. A44; A57-58.

CED's subsequent efforts to have the Club pay the outstanding invoice proved futile. A9. The Club's refusal to pay the invoice left CED with no choice but to initiate this litigation. A9.

## STANDARD OF REVIEW

This Court reviews *de novo* a district court's grant of a motion to dismiss under Rule 12(b)(6), accepting all facts alleged in the complaint to be true and drawing all inferences in favor of the plaintiff. See, e.g., City of Pontiac General Employees' Retirement System v. MBIA, Inc., 637 F.3d 169, 173 (2d Cir. 2011); Kassner v. 2nd Avenue Delicatessen Inc., 496 F.3d 229, 237 (2d Cir. 2007). A district court's legal conclusions, including its interpretation and application of a statute of limitations, are also reviewed *de novo*. See City of Pontiac General Employees' Retirement System, 637 F.3d at 173.

-10-

## SUMMARY OF ARGUMENT

The district court failed to apply the appropriate legal standard for determining when the statute of limitations began to run on CED's breach of contract claim. Specifically, the district court erred in holding that the statute of limitations commenced upon the Termination Date. A proper analysis would have determined that, given the nature of the contract between CED and the Club and the course of dealings between them over their 13-year-long business relationship, the statute of limitations began to run when the Club breached their contract by refusing to pay CED's invoice. To support its holding, the district court relied on cases with limited relevance and whose facts are distinguishable, and disregarded case law that was more applicable to the facts at hand. Finally, the district court's concern that an alternate ruling would lead to an indefinite extension of the statute of limitations was unfounded. Consequently, the district court's order should be reversed.

In addition, the district court erred in holding that CED's account stated claim was not properly pled because the complaint sufficiently alleged all of the elements of an account stated claim. An account stated was implied in this case because CED sent the Club an invoice and the Club kept it for three years without objecting to it. The

-11-

district court erred in finding that the Club's failure to object to CED's invoice for three years was reasonable, because this determination runs counter to New York account stated case law. Furthermore, the district court made a factual determination not supported by the complaint regarding whether the Club did object to CED's invoice in less than three years, and this was not appropriate at the motion to dismiss stage.

For these reasons, the district court's dismissal of CED's complaint should be reversed.

## ARGUMENT

### I.    THE DISTRICT COURT ERRED IN COMMENCING THE STATUTE OF LIMITATIONS UPON THE TERMINATION OF SERVICES

The issue presented is when, under the circumstances, did the breach of contract claim accrue. The district court held that where "the claim is for payment of a sum of money allegedly owed pursuant to a contract, the cause of action accrues when the [party making the claim] possesses a legal right to demand payment." A86 (quoting Hahn Auto. Warehouse, Inc. v. Am. Zurich Ins. Co., 18 N.Y.3d 765, 770, 944 N.Y.S.2d 742, 967 N.E.2d 1187 (2012) (alteration in original)). In other words, the "statute of limitations is 'triggered when the party that was owed money had the right to demand

payment, not when it actually made the demand.'" A86-87 (quoting <u>Hahn</u>,

18 N.Y.3d at 771). Applying the aforementioned rule to this case, the

district court concluded that CED had the right to demand payment, and

therefore the right to sue Defendant, upon CED's termination of services.

A87. Relying exclusively on <u>Hahn</u>, the district court saw no distinction

among payment dispute contract cases, regardless of context, contract terms,

course of dealings or the inability to demand payment upon termination. In

so ruling, the district court committed reversible error.

### A.    <u>Hahn</u>'s Application is Limited

In the very first sentence of the <u>Hahn</u> opinion the Court of

Appeals framed the issue as follows:

> The issue on this appeal is whether the six year
> statute of limitations applicable to the insurers'
> breach of contract counterclaims began to run
> when they possessed the legal right to demand
> payment from the insured or **years later** after they
> issued invoices. **Under the terms of the
> insurance contracts in this case,** we conclude that
> the counterclaims accrued when the insurers had
> the right to demand payment.

Hahn, 18 N.Y.3d at 767 (emphasis added). Hahn's applicability is therefore tied to the terms of the contract at issue and the timing of the issuance of invoices.[1]

In Hahn, the insurance contracts (a) required the insurer to issue invoices, (b) proscribed the time at which the insurer had to submit the invoices to the insured, and (c) set the deadlines by which the insured had to pay the insurer under various policies. Due to inadvertence, the insurer (Zurich) waited up to 10 years after the proscribed deadlines to submit invoices to its insured. Id. at 771. These facts were critical to the Hahn majority's decision (the court was split four to three). "Such provisions [specifying when invoices should have been sent] contradict the open-ended arrangement now proposed by Zurich." Id. at 772.

The Hahn plaintiff could have sued upon the expiration of the contractually established deadlines for payment, but that was not the situation between CED and the Club. The oral agreement did not (because it could not) establish the amount certain for payment or a deadline by which

---

[1]  The holding in Hahn may also be limited to "retrospective insurance arrangements" and not more broadly to contracts in general. See Hahn, 18 N.Y.3d at 772 n.5 ("We reject Zurich's contention, accepted by the dissent, that we should adopt an accrual-upon-demand rule for the retrospective insurance arrangements at issue.")

payment was required. CED billed the Club for its time. A5-6. In order for

CED to possess the legal right to sue the Club, it first had to generate an

invoice based on five months' worth of billable hours (for the period

between June and October 2007). Then CED had to send the invoice to the

Club for payment. CED could not generate an invoice until after it had

completed the work and calculated its billable hours. The complaint

established that this process took months to gather (the invoice was more

than 80-pages long). A8-9. Unlike the Hahn plaintiff, CED did not

unreasonably delay its submission of an invoice. In short, the two critical

factors for the Hahn majority – proscribed deadlines and inadvertent yet

significant delays – are not present here.

### B.    The District Court's Application of Hahn is Inconsistent with New York Case Law

The district court recognized the existence of non-payment

cases in which the statute of limitations did not accrue upon termination of

performance: "It is true that, in certain cases, 'when the right to final

payment is subject to a condition, the obligation to pay arises and the cause

of action accrues, only when the condition has been fulfilled.'" A87

(quoting John J. Kassner & Co. v. City of New York, 46 N.Y.2d 544, 550,

415 N.Y.S.2d 785, 389 N.E.2d 99 (1979)). The Hahn majority also

recognized other non-payment cases that resulted in a different statute of

limitations conclusion, most notably <u>Kassner</u> and <u>Continental Cas. Co. v.</u>

<u>Stronghold Ins. Co., Ltd.</u>, 77 F.3d 16 (2d Cir. 1996). The question raised by

this appeal is which line of decisional history better fits CED's facts. Aside

from <u>Hahn</u> being limited in its application and based on factors not present

here, there are other cases, including <u>Kassner</u> and <u>Continental</u>, that more

closely align with CED's facts and call for a different outcome.

A case with almost identical facts is <u>Verizon N.Y., Inc. v.</u>

<u>Sprint PCS</u>, 43 A.D.3d 686, 841 N.Y.S.2d 529 (1st Dept. 2007). In <u>Verizon</u>,

the Appellate Division, First Department held that plaintiff's "cause of

action for breach of contract accrued, for purposes of the statute of

limitations, on [the date] by which date plaintiff's [] invoice demanded

payment, and defendants failed to pay." 43 A.D.3d at 686-87, 841 N.Y.S.2d

at 530. Verizon completed its work in April 2000 and subsequently sent an

invoice in October 2000 (6 months later) that called for payment in

November 2000. Verizon sued in June 2006.[2] The appeals court held that

the claim accrued in November 2000, the date of the deadline set forth in the

---

[2]   The timing of the <u>Verizon</u> case is very similar to the dates at issue.
Verizon sent an invoice six months after completion of its work whereas
CED sent its invoice nine months after completing its work. And both
Verizon and CED commenced suit six years and two months after
completing work.

-16-

invoice; the claim was therefore timely. Id. The court dismissed

defendant's argument that the claim accrued in April 2000 when Verizon

completed its work "because this claim is for payment on the contract, not

for defective construction or consequential damages." Id. at 687. Like the

case at hand, the contract fee was not fixed (the Verizon contract only

included an estimate) and thus needed to be provided after the completion of

the work. Id. at 686-87. See also Bluefin Wear, Inc. v. Tuesday's Child

Boutique, Inc., 33 Misc.3d 1233(A), 2011 WL 6187134, at *4 (Sup. Ct.

Kings County Dec. 14, 2011) (extending the accrual to "when defendant was

required, but failed, to pay the amount indicated on each invoice by its

respective due date"). The Verizon court cited to Kassner for the

proposition that the claim accrued at the time the defendant failed to pay the

invoice and not before. Verizon, 43 A.D.3d at 687, 841 N.Y.S.2d at 530.

In other words, the Appellate Division, First Department deemed the invoice

a condition precedent to payment where the sum was not certain. Id.; see

also Liberty Mutual Ins. Co. v. Precision Valve Corp., 402 F. Supp. 2d 481,

485 (S.D.N.Y. 2005) ("Where the claim is based upon money due and owing

under a contract, the statute of limitations does not begin to run until

payment is due and been rejected."); Henry Boeckmann, Jr. & Associates,

Inc. v. Board of Educ., Hempstead Union Free School Dist. No. 1, 207

-17-

A.D.2d 773, 775, 616 N.Y.S.2d 395, 397 (2d Dept. 1994) ("A breach of contract can be said to occur when the claimant's bill is expressly rejected, or when the 'party seeking payment should have viewed his claim as having been constructively rejected.'").

In Hertzberg & Sanchez P.C. v. Friendship Dairies Inc., 14 Misc.3d 136(A), 2007 WL 488141 (N.Y. Sup. App. Term 2007), the Appellate Term went further than the Verizon and Bluefin courts in holding that the accrual of a breach claim could extend even beyond the due date set forth in an invoice. The court noted that "in the absence of a showing [by the defendant] of the terms of the contract between the parties, plaintiff's billing does not necessarily establish that the cause of action accrued at that time." Id. at *1. The court was suggesting that it could have accrued even later.

In this case, the district court dismissed Verizon (and never addressed Hertzberg or Bluefin) as "inconsistent with both Court of Appeals and Appellate Division precedent." A87. The district court specifically cited to Hahn and Phillips Constr. Co. v. City of New York, 61 N.Y.2d 949, 951, 463 N.E.2d 585, 475 N.Y.S.2d 244 (1984), contending that Hahn superseded Verizon (even though Hahn did not mention Verizon). A87-88. The district court's reliance on Hahn and Phillips to the exclusion of the

other cases was misplaced.

As set forth above, <u>Hahn's</u> application is limited and its facts are distinguishable.  Like <u>Hahn</u>, <u>Phillips</u> involved a contract in which the amount and the timing of payment were expressly stated.  <u>Phillips</u> was a construction case in which a fixed amount was due upon substantial completion of construction.  <u>Phillips</u>, 61 N.Y.2d at 950-51.  The court held that the statute of limitations accrued upon substantial completion of the construction, when the amount due was known.  <u>Id.</u>  The parties knew how much was owed and the deadline for payment had passed.  There were no barriers to plaintiff filing suit for payment.  The fact that payment terms (amount and timing) were established was a critical factor for the <u>Hahn</u> majority: "[the statute of limitations does not begin to run until] **all of the facts necessary** to the cause of action have occurred so that the party would be entitled to obtain relief in court."  <u>Hahn Auto. Warehouse, Inc. v. Am. Zurich Ins. Co.</u>, 18 N.Y.3d 765, 770, 944 N.Y.S.2d 742, 967 N.E.2d 1187 (2012) (emphasis added) (citations and internal quotation marks omitted).[3]

---

[3]  The <u>Hahn</u> majority relied on a line of cases that "are inapposite inasmuch as they involve contracts pursuant to which the plaintiff contractors were entitled to payment upon completion or substantial completion of the work."  <u>Hahn</u>, 81 A.D.3d 1331, 1338, 916 N.Y.S.2d 678 (4th Dept. 2011).  These cases included <u>Kingsley Arms, Inc. v. Copake-Taconic Hills Cent. School Dist.</u>, 9 A.D.3d 696, 780 N.Y.S.2d 805 (3d Dept. 2004), and <u>Albany Specialties v. Shenendehowa Cent.</u>

Here, neither the amount nor the timing of the Club's payment to CED was preordained; at the time of CED's termination, neither party knew (or could have known) the amount of money due for services rendered through termination.  Under Hahn, when a performing party lacks the information necessary to demand payment at the time of termination, that party does not have the right to demand payment.  Thus, whether CED lacked the facts necessary to sue at the time of termination, or whether providing an invoice to the Club was a condition precedent to payment, the statute of limitations did not begin to accrue as of the Termination Date.  At worst, the issue is one of fact not ripe for dismissal.  See Minskoff Grant Realty & Mgt. Corp. v. 211 Mgr. Corp., 71 A.D.3d 843, 845, 897 N.Y.S.2d 485 (2d Dept. 2010) (denying a motion to dismiss where there was a question of fact as to when the legal right to demand payment occurred).[4]

## C.    There Was No Unreasonable Delay

---

School Dist., 307 A.D.2d 514, 763 N.Y.S.2d 128 (3d Dept. 2003); in both cases the court found that the claims accrued on the date payment was denied.

[4]  The Hahn majority cited to Minskoff as the first in a "line of Appellate Division precedent" holding that the statute of limitations was triggered when the party that was owed money had the right to demand payment, not when it actually made the demand.  Hahn, 18 N.Y.3d at 770-71.  However, Minskoff was not supportive of the Hahn majority.

The district court deemed irrelevant the very facts that distinguish this case from the Hahn line of cases, namely, that CED "took months to calculate its billable hours and to generate an invoice and that defendant historically took two to eight months after receipt to pay invoices." A88. "To hold otherwise would allow [a party] to extend the statute of limitations indefinitely by simply failing to make a demand." A88 (quoting Hahn, 18 N.Y.3d at 771) (citations and internal quotation marks omitted). There are several reasons why the district court's concern about indefinitely extending the statute of limitations is inapplicable here.

First, the cases cited by the Hahn majority on this point – Town of Brookhaven v. MIC Prop. & Cas. Ins. Corp., 245 A.D.2d 365, 668 N.Y.S.2d 37 (2d Dept. 1997), and State of New York v. City of Binghamton, 72 A.D.2d 870, 421 N.Y.S.2d 950 (3d Dept. 1979) – are construction cases "where services were performed and payment was then due at a particular time." Hahn, 18 N.Y.3d at 776. Hahn is no different. As set forth above, the contracts in Hahn also contained "specific references to the applicable time periods when [the insurer] was entitled to calculate adjustments and bill [the insurer] for the amounts owed." Id. at 772. In contrast, the agreement between the Club and CED did not establish the amount due or the time by which CED had to (or could) invoice the Club or the Club had to pay CED's

-21-

invoice. Unlike the plaintiffs in <u>Town of Brookhaven</u>, <u>State of New York</u> and <u>Hahn</u>, CED did not have all of the facts necessary to bring an action as of the Termination Date.

Second, in a factually analogous statute of limitations case, <u>Continental Cas. Co. v. Stronghold Ins. Co., Ltd.</u>, this Court imposed a reasonable delay test to ensure that a plaintiff did "not have the power to put off the running of the Statute of Limitations indefinitely." 77 F.3d 16, 21 (2d Cir. 1996) (citations and internal quotation marks omitted). In <u>Continental</u>, the plaintiff sought indemnification from defendants, reinsurers, for malpractice claims that it had paid more than six years before bringing suit against the reinsurers. <u>Id.</u> at 18. This Court had to determine whether plaintiff's suit was timely under the six-year statute of limitations. The answer turned on when the insured loss became due and payable under the applicable policy; this is akin to a determination of when the insurer had the right to demand payment. <u>Id.</u> at 20. The policy in <u>Continental</u> required all losses to be reported to the reinsurer (again, akin to CED issuing an invoice for payment to the Club), which this Court deemed to be a condition precedent to payment. <u>Id.</u> In terms of timing, this Court concluded that "Continental was entitled – indeed probably obligated – to wait a reasonable time for the reinsurers to decide whether they would pay or not, and if so,

-22-

how much." Id. Accordingly, "Continental's causes of action accrued then
(or when the reinsurers refused to pay, if earlier), and not before." Id. at 21.
Once Continental was in a position to report losses to its reinsurers (i.e.,
demand payment), this Court held that "it could not unreasonably delay
reporting those losses to the reinsurers." Id. To complete the analogy,
CED's breach cause of action accrued a reasonable period of time after
issuing its invoice to the Club.

Third, in determining when a claim accrues, New York courts
have looked at the course of dealing between the parties and the type of
contract at issue, among other things. See Minskoff Grant Realty & Mgt.
Corp. v. 211 Mgr. Corp., 71 A.D.3d 843, 897 N.Y.S.2d 485 (2d Dept. 2010)
(examining facts and circumstances surrounding performance and payment);
Thompson v. Horwitz, 100 A.D.3d 864, 865, 954 N.Y.S.2d 572, 574 (2d
Dept. 2012) (finding that the defendants failed to show when the plaintiff's
legal right to demand payment arose and, therefore, failed to establish their
prima facie entitlement to judgment as a matter of law); Helprin v. Harcourt,
Inc., 277 F. Supp. 2d 327, 337 (S.D.N.Y. 2003) (noting that the court could
take into consideration the parties' prior course of dealings "to assess at
what point the breach occurred and the statute of limitations commenced to
run").

-23-

Applying this Court's unreasonable delay test from <u>Continental</u>, CED's complaint is unrefuted that CED issued its more than 80-page invoice to the Club as soon as practical, which was only eight months after the Termination Date. The district court deemed irrelevant the fact that the timing of CED's invoice was consistent with the course of conduct between the parties, where invoices (the demand for payment) were not submitted immediately after services were rendered, and the Club did not pay invoices upon receipt. A5-6; A8-9; A57. Rather, the Club paid invoices on average between two to eight months after receipt. A57. Factoring in the course of dealing between the parties precludes the district court's supposition that CED could have sued the Club as early as the Termination Date. How could CED sue the Club for fees it could not have calculated and how could the Club default in payment without knowing how much to pay? Stated differently, the Club's obligation to pay CED under the operative oral agreement was conditioned on CED providing an invoice.

<u>Fourth</u>, the timing of CED's invoice was more in line with the permissible six month period between termination and invoicing in <u>Verizon</u>. In contrast, in <u>Hahn</u> the plaintiff had waited years (up to a decade) before issuing payment demands, which led the <u>Hahn</u> majority to express the concern about improperly tolling the statute of limitations.

-24-

Finally, as stated by the Hahn dissent, "a ruling in [plaintiff's]
favor is unlikely to 'encourage parties who are owed money to refrain from
sending out bills in the hope of prolonging the statute of limitations.'"
Hahn, 18 N.Y.3d at 776.

## II.    THE DISTRICT COURT ERRED IN HOLDING THAT PLAINTIFF'S ACCOUNT STATED CLAIM WAS NOT PROPERLY PLED

The district court made two errors in dismissing Plaintiff's
account stated claim.  First, the district court deemed the Club's failure to
object to CED's invoice for three years to be reasonable.  This determination
runs counter to New York account stated case law.  Second, contrary to the
plain language of the complaint that the Club failed to object until lawyers
became involved in 2011, the district court made its own determination that
the Club did, in fact, object to CED's invoice when presented with it in 2009
and in 2010.  At the motion to dismiss stage, the court was supposed to view
the facts in a light most favorable to the non-movant, not make its own
factual conclusions in contravention of the complaint.  For these two
independent reasons, the district court's dismissal should be reversed.

### A. The District Court Erroneously Deemed A Three Year Delay to be Reasonable

-25-

The district court cited to <u>IMG Fragrance Brands, LLC v.</u>

<u>Houbigant, Inc.</u>, 679 F. Supp. 2d 395 (S.D.N.Y. 2009) for the elements of an

account stated claim: "To state a claim for account stated, the plaintiff must

plead that: (1) an account was presented; (2) it was accepted as correct; and

(3) [a] debtor promised to pay the amount stated." A90 (quoting <u>IMG</u>

<u>Fragrance Brands, LLC</u>, 679 F. Supp. 2d at 411). The district court

inexplicably omitted the very next line of the <u>IMG</u> decision, which is the

most applicable here: "The second and third requirements (acceptance of

the account as correct and a promise to pay the amount stated) may be

implied if 'a party receiving a statement of account keeps it **without**

**objecting to it within a reasonable time**.'" <u>IMG Fragrance Brands, LLC</u>,

679 F. Supp. 2d at 411 (quoting <u>LeBoeuf, Lamb, Greene & MacRae, L.L.P.</u>

<u>v. Worsham</u>, 185 F.3d 61, 64 (2d Cir. 1999)) (emphasis added). The issue

presented on appeal is whether the Club objected to CED's invoice within a

reasonable time.

CED notified the Club in writing in December 2007 that the

invoice would be forthcoming; the Club did not respond or object. A8.

CED then submitted the 80-page invoice to the Club in July 2008 based on

the agreed upon (and historical) rates of service. A6-7; A7; A8-9; A11.

Paragraph 39 of the complaint stated that the invoice was delivered to,

-26-

received and retained by the Club without any objection. A11. In paragraph

20 of the complaint, it was alleged that the Club's manager opted to ignore

the invoice. A8-9. The declaration of Mr. Montalvo explained that the Club

ignored CED's requests until lawyers became involved in 2011, three years

after the invoice was issued. A58.

      The district court nevertheless held that "Plaintiff's allegations

here belie any argument that defendant failed to dispute plaintiff's invoice

within a reasonable amount of time." A91. Under New York case law,

however, three years is not a reasonable amount of time for the Club to fail

to dispute Plaintiff's invoice. See Kramer, Levin, Nessen, Kamin & Frankel

v. Aronoff, 638 F. Supp. 714 (S.D.N.Y. 1986) (holding that a three-year

silence created an implied account stated).

      In Kramer, Levin, Nessen, Kamin & Frankel v. Aronoff, a law

firm brought an action to recover legal fees for legal services it allegedly

rendered to its client. 638 F. Supp. 714 (S.D.N.Y. 1986). One of the

partners at the firm represented and acted as counsel or co-counsel for the

client in many matters over the course of four years and the firm periodically

sent bills to the client for payment. Id. at 718. The final statement was

dated September 19, 1979. Id. On March 29, 1982, the partner wrote the

client requesting payment of the firm's final bill. Id. In reply, the client –

-27-

for the first time – disputed the propriety of the bill. Id.  On March 1, 1985, the firm commenced an action, including a claim for an account stated. Id. The court noted that "[b]ecause a party who receives an account is bound to examine the statement and make all necessary objections, an agreement to pay an indebtedness may be implied if a party receiving a statement of account keeps it without objecting to it within a reasonable amount of time . . .." Id. at 719.  In his defense, the client asserted that he never expressly acknowledged the final bill or expressly indicated an intent to pay without objection. Id. at 720.  The court quoted Lockwood v. Thomas, a Court of Appeals case wherein the court "stated 'if, instead of an express admission of the correctness of the account, the party receiving it keeps the same by him and makes no objection within a reasonable time, his silence will be construed into an acquiescence in its justness.'" Id. (citing Lockwood v. Thomas, 11 N.Y. 170 (1854)).  The court granted the firm's motion for summary judgment, finding that "where almost three years passed before [the client] questioned the billing, such a period of silence – in which there was ample opportunity to object to the billing – amounts to an implied acquiescence to the stated account." Id. at 720.

Based on the aforementioned authority, the Club's failure to object to the invoice converted it into an account stated. See Navimex S.A.

De C.V. v. S/S Northern Ice, 617 F. Supp. 103 (S.D.N.Y. 1984) (holding

that defendant's failure to object for five months to plaintiffs' summary

statement of account converted the bill into an account stated); Healthcare

Capital Mgt., LLC v. Abrahams, 300 A.D.2d 108, 751 N.Y.S.2d 460 (1st

Dept. 2002) (finding that buyers did not object within a reasonable time to

invoices sellers sent out, where they objected to one bill ten months after it

was sent and to another six months after it was sent); In re Rockefeller

Center Properties, 266 B.R. 52, 58 (S.D.N.Y. 2001) (finding an account

stated was created by defendant's failure to object for two to five years after

receiving statements); In re Rockefeller Center Properties, 272 B.R. 524,

544-45 (S.D.N.Y. 2000) (listing cases where New York courts have found

objections after five months to four years to be untimely).

## B. **The District Court Erred in Determining that the Club Disputed the Invoice Prior to 2011**

Courts are required to liberally construe the complaint and

accept as true the facts alleged in the complaint and any submissions in

opposition to a dismissal motion.  Shomo v. City of New York, 579 F.3d

176, 183 (2d Cir. 2009) (quoting Chambers v. Time Warner, Inc., 282 F.3d

147, 152 (2d Cir. 2002)).  Plaintiffs are to be accorded the benefit of every

possible favorable inference.  See DiFolco v. MSNBC Cable L.L.C., 622

F.3d 104, 110-11 (2d Cir. 2010).

CED's complaint expressly stated that, despite a number of meetings and telephone calls with representatives of the Club, the Club opted to ignore CED's invoice. A8-9. The Club did not object to the invoice until three years after its issuance when lawyers became involved in 2011. A58.

The district court referenced the meetings between CED and the Club about the invoice and reached its own factual conclusion: "[t]hese facts demonstrate that the parties disputed payment of the invoice." A91. Based on its interpretation of the complaint, the district court held that Plaintiff's account stated claim was "thus improper." A92. The only thing improper was the court making a factual finding in the context of a motion to dismiss. See DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 110-11 (2d Cir. 2010). And the finding itself was inaccurate. The fact that the parties had meetings to discuss the invoice does not equate to an objection. CED alleged that Club representatives opted to ignore the notices that the invoice would be forthcoming, refused to engage in discussion about the invoice once it was delivered and did not assert an objection until 2011. A8-9.

In any event, although courts have found that a delay of two to four years creates an implied account stated as a matter of law, see In re Rockefeller Center Properties, 266 B.R. 52 (S.D.N.Y. 2001) and Kramer,

-30-

Levin, Nessen, Kamin & Frankel v. Aronoff, 638 F. Supp. 714 (S.D.N.Y.

1986), generally whether a bill has been kept long enough to create an

implied account stated is a question of fact. See Dreyer and Traub v.

Rubinstein, 191 A.D.2d 236, 236-37, 594 N.Y.S.2d 257 (1st Dept. 1993);

Bowne of New York, Inc. v. International 800 Telecom Corp., 178 A.D.2d

138, 139, 576 N.Y.S.2d 573 (1st Dept. 1991). At the very least, whether it

was reasonable for the Club to remain silent regarding the propriety of

CED's invoice for three years after receiving it is a question of fact and,

thus, the Club's motion to dismiss CED's account stated claim should have

been denied.

## CONCLUSION

For the foregoing reasons, Appellant-Plaintiff Consolidated

Energy Design Inc. respectfully requests that this Court reverse the Order

entered by the district court on March 24, 2014.

Dated:   New York, New York
         June 5, 2014

                    Respectfully submitted,

                    THE STOLPER GROUP, LLP

                    By: _____
                    Michael Stolper

                    241 Centre Street
                    New York, New York  10013
                    (212) 337-3502

                    *Attorneys for Defendant-Appellant*
                    *Consolidated Energy Design Inc.*

## CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:  This brief contains 6,631 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:  This Brief has been prepared in proportionally space typeface using Microsoft Office Word, in Times New Roman, font size 14.

Dated:   New York, New York
         June 5, 2014

                        Respectfully submitted,

                        THE STOLPER GROUP, LLP

                        By:_____
                            Michael Stolper

                        241 Centre Street
                        New York, New York  10013
                        (212) 337-3502and

                        *Attorneys for Defendant-Appellant*
                        *Consolidated Energy Design Inc.*